RALPH JACKSON, JR., AN INFANT BY HIS GUARDIAN *AD LITEM*, RALPH JACKSON AND RALPH JACKSON, INDIVIDUALLY, PLAINTIFFS-APPELLANTS. v. THOMAS HANKINSON AND THE BOARD OF EDUCATION OF THE BOROUGH OF NEW SHREWSBURY, DEFENDANTS-RE-SPONDENTS.

Argued January 23, 1968—Decided February 19, 1968.

*Mr. Thomas F. Shebell, Jr.* argued the cause for appellants (*Mr. Thomas F. Shebell,* attorney).

· *Mr. Joseph P. Rose* argued the cause for respondents (*Messrs. Oppenheim & Oppenheim,* attorneys; *Mr. Daniel Oppenheim,* of counsel; *Mr. Albert E. Fershing,* on the brief). ·  ·

PER CURIAM: In *Jackson v. Hankinson,* 94 *N. J. Super.* 505 (1967) the Appellate Division affirmed the judgment of no cause which had been returned by the jury in favor of the defendant Hankinson but reversed the directed judgment which had been entered by the trial court in favor of the defendant Board of Education. We granted certification. 50 *N. J.* 292 (1967). Without indicating approval of all of the Appellate Division's discussion with respect to the elements of negligence insofar as the Board was concerned (94 *N. J. Super.,* at *pp.* 517–518), we now affirm subject to the following comments.

▇ The Appellate Division correctly determined that the school bus operator's duty was to exercise reasonable care for the safety of the school children being transported by him and that the evidence justified the jury in finding that that duty was properly discharged insofar as he was concerned. 94 *N. J. Super.,* at *pp.* 511–513. The Appellate Division also correctly determined that there was sufficient evidence to call for a new trial and a jury finding as to the liability of the Board of Education. But we hold the view that on the retrial the plaintiffs will not have the burden of establishing "active wrongdoing" as the Appellate Division asserted but will be entitled to prevail if they establish, in addition to causal relation, that the Board negligently failed to exercise "reasonable supervisory care" for the safety of the students while being transported in the school bus. See *Titus v. Lindberg,* 49 *N. J.* 66, 73, 79 (1967).

▇ It may be noted that the plaintiffs' complaint charged negligence and causal relation; that the Board's answer contained denials but set forth no claim of municipal immunity or related affirmative defense; that the pretrial order contained no suggestion of any such defense; and

that during the trial such defense was advanced not by the attorney for the Board but by the trial court itself. Under the circumstances, the Appellate Division might well have accepted the plaintiffs' contention that, procedurally, questions of municipal immunity and active wrongdoing were not in the case. 94 *N. J. Super.*, at *pp.* 513–514. But be that as it may, we believe that in a tort proceeding such as this against a Board of Education for personal injury damages resulting from its alleged failure to safeguard its students while still in its custody, ordinary principles of negligence rather than the special concept of active wrongdoing should be controlling. See *Titus v. Lindberg, supra; cf. Restatement (Second) of Torts* § 320 (1965); *Cianci v. Board of Education,* 18 *A. D. 2d* 930, 238 *N. Y. S. 2d* 547 (1963); *Selleck v. Board of Education etc.,* 276 *App. Div.* 263, 94 *N. Y. S. 2d* 318 (1949); *Ziegler v. Santa Cruz City High School District,* 168 *Cal. App. 2d* 277, 335 *P. 2d* 709 *(Dist. Ct. App.* 1959); *Tymkowicz v. San Jose Unified School District,* 151 *Cal. App. 2d* 517, 312 *P. 2d* 388 *(Dist. Ct. App.* 1957); *McLeod v. Grant County School District No.* 128, 42 *Wash. 2d* 316, 255 *P. 2d* 360 (1953); *Rice v. School District No.* 302, *Pierce County,* 140 *Wash.* 189, 248 *P.* 388 (1926); see also *Molitor v. Kaneland Community Unit School District,* 18 *Ill. 2d* 11, 163 *N. E. 2d* 89 (1959), certification denied, 362 *U. S.* 968, 80 *S. Ct.* 955, 4 *L. Ed. 2d* 900 (1960); Annot., *Tort Liability of Public Schools and Institutions of Higher Learning,* 86 *A. L. R. 2d* 489 (1962); *Symposium, Sovereign Immunity and Public Responsibility,* 1966 U. Ill. L. F. 793.

[6] In its earlier stages, New Jersey's unique concept of active wrongdoing served to alleviate many of the individual injustices which would have accompanied strict application of the notion. that a municipality should be immune from responsibility for its torts. See *Cloyes v. Delaware Tp.,* 23 *N. J.* 324, 329 (1957). With passage of time and intensification of highly persuasive attacks on governmental immunities, along with other immunities (*Collopy*

*v. Newark Eye and Ear Infirmary,.* 27 *N. J.* 29 (1958)), our courts displayed readiness to sustain findings of active wrongdoing in increasingly varying circumstances. See *McAndrew v. Mularchuk,* 33 *N. J.* 172, *pp.* 181–182 (1960); *Hayden v. Curley,* 34 *N. J.* 420, 424–428 (1961). And although there has thus far been no express and complete disavowal of active wrongdoing terminology, there has been a shift towards frank recognition that municipal entities, along with all others, should justly be held accountable for injuries resulting from their tortious acts and omissions under ordinary principles of negligence, except, as a matter of policy, in situations involving so-called discretionary determinations and the like, recently dealt with in *Amelchenko v. Freehold Borough,* 42 *N. J.* 541, *pp.* 549–550 (1964), *Hoy v. Capelli,* 48 *N. J.* 81, 87–91 (1966) and *Visidor Corp. v. Borough of Cliffside Park,* 48 *N. J.* 214, *pp.* 220–221 (1966), *cert.* denied, 386 *U. S.* 972, 87 *S. Ct.* 1166, 18 *L. Ed. 2d* 132 (1967). See *B. W. King, Inc. v. Town of West New York,* 49 *N. J.* 318, *pp.* 324–325 (1967); *Coleman v. Edison Tp.,* 95 *N. J. Super.* 600, 605 (*App. Div.* 1967).

We need not here pursue the question of whether the active wrongdoing concept may still have vitality in other contexts for we are satisfied that, in any event, it has none here. *Cf. Titus v. Lindberg, supra,* 49 *N. J.,* at *p.* 79. It must be borne in mind that the relationship between the child and the school authorities is not a voluntary one but is compelled by law. The child must attend school (*R. S.* 18:14–14) and is subject to school rules and disciplines. In turn the school authorities are obligated to take reasonable precautions for his safety and well-being. *Titus v. Lindberg, supra,* 49 *N. J.,* at *p.* 73; *Restatement, supra* § 320, comment (a). Where, as here, they have provided transportation to and from school in a school bus (*R. S.* 18:14–8) their obligation continues during the course of the transportation. If they negligently fail to discharge their duty and consequential injury results to the child they

should be held accountable in the same manner as other tortfeasors. All of the policy considerations point in that direction and legislation does not point to the contrary. The school district immunity statute is under its terms clearly inapplicable (*Titus v. Lindberg, supra,* 49 *N. J.,* at *p.* 77) and the ever broadening legislative provisions, for indemnification and insurance coverage, evidence rejection rather than acceptance of school district irresponsibility here. *R. S.* 18:5–50.4a; *Titus v. Lindberg, supra,* 49 *N. J.,* at *pp.* 79–80.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.